1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| BARBARA ANN GROOM, | ) Case No. EDCV 12-1509 JC |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM OPINION AND |
| | ) ORDER OF REMAND |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| Defendant. | ) |

_____

18
19

**I.    SUMMARY**

20        On September 13, 2012, plaintiff Barbara Ann Groom ("plaintiff") filed a

21 Complaint seeking review of the Commissioner of Social Security's denial of

22 plaintiff's application for benefits.  The parties have consented to proceed before a

23 United States Magistrate Judge.

24        This matter is before the Court on the parties' cross motions for summary

25 judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

26 Court has taken both motions under submission without oral argument.  <u>See</u> Fed.

27 R. Civ. P. 78; L.R. 7-15; September 17, 2012 Case Management Order ¶ 5.

28 ///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On November 8, 2010, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits.  (Administrative Record ("AR") 152, 159).  Plaintiff asserted that she became disabled on December 23, 2004, due to cervical spondylosis with neck pain and myelopathy, migraine headaches, arthritis, and heart problems.  (AR 213, 217).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on April 10, 2012.  (AR 29-70).

On May 25, 2012, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 9-23).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  history of cervical spondylosis with radiculopathy, status post discectomy and fusion, osteoarthritis of the hands and joints, right plantar fasciitis, migraines, obesity, depression, and polysubstance abuse in an unknown state of remission (AR 11); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 12); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional limitations[1] (AR 13-14); (4) plaintiff not could perform her past relevant work

---

[1]The ALJ determined that plaintiff (i) could lift and/or carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand and/or walk for six hours out of an eight-hour workday with regular breaks; (iii) could sit for six hours out of an eight-hour workday with regular breaks; (iv) needed to be permitted to alternate between sitting and standing at one hour intervals for one to five minutes at the work station; (v) had no limitations with respect to pushing and/or pulling other than those indicated for lifting and/or carrying; (vi) could frequently use her hands for fine and gross manipulations; (vii) could frequently rotate her neck from side to side; (viii) could occasionally stoop, kneel, crawl, crouch, and climb ramps and stairs; (ix) could occasionally

(continued...)

2

1  (AR 21); (5) there are jobs that exist in significant numbers in the national

2  economy that plaintiff could perform, specifically photocopy machine worker,

3  lunch room counter attendant, and greeter (AR 22); and (6) plaintiff's allegations

4  regarding her limitations were not credible to the extent they were inconsistent

5  with the ALJ's residual functional capacity assessment (AR 16).

6         The Appeals Council denied plaintiff's application for review.  (AR 1).

7  **III.   APPLICABLE LEGAL STANDARDS**

8         **A.   Sequential Evaluation Process**

9         To qualify for disability benefits, a claimant must show that the claimant is

10  unable "to engage in any substantial gainful activity by reason of any medically

11  determinable physical or mental impairment which can be expected to result in

12  death or which has lasted or can be expected to last for a continuous period of not

13  less than 12 months." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1110 (9th Cir. 2012)

14  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The

15  impairment must render the claimant incapable of performing the work claimant

16  previously performed and incapable of performing any other substantial gainful

17  employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094,

18  1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

19         In assessing whether a claimant is disabled, an ALJ is to follow a five-step

20  sequential evaluation process:

21         (1)    Is the claimant presently engaged in substantial gainful activity?  If

22                so, the claimant is not disabled.  If not, proceed to step two.

23

24  _____

25         [1](...continued)

26  reach overhead bilaterally; (x) could not climb ladders, ropes or scaffolds; (xi) needed to avoid
   exposure to unprotected heights; (xii) needed to avoid concentrated exposure to extremely cold

27  temperatures; (xiii) could sustain concentration and attention, persistence and pace in at least
   two-hour blocks of time; (xiv) could respond appropriately to coworkers, supervisors, and the

28  public; and (xv) could "perform simple one-to-two-step job instructions."  (AR 13-14).

(2)    Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)    Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

4

1  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

2  mind might accept as adequate to support a conclusion."  Richardson v. Perales,

3  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

4  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

5  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

6          To determine whether substantial evidence supports a finding, a court must

7  "'consider the record as a whole, weighing both evidence that supports and

8  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

9  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

10  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

11  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

12  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

13  **IV.    DISCUSSION**

14          Plaintiff contends that the ALJ erred at step five in finding that plaintiff

15  could perform the occupations of photocopy machine worker, lunch room counter

16  attendant, and greeter, in part, because the level of complexity required by such

17  jobs is inconsistent with plaintiff's limitation to "simple one-to-two-step job

18  instructions."  (Plaintiff's Motion at 11-17) (citing AR 13-14).  The Court agrees.

19  As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

20          **A.    Pertinent Law**

21          If, at step four, the claimant meets her burden of establishing an inability to

22  perform past work, the Commissioner must show, at step five, that the claimant

23  can perform some other work that exists in "significant numbers" in the national

24  economy (whether in the region where such individual lives or in several regions

25  of the country), taking into account the claimant's residual functional capacity,

26  age, education, and work experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R

27  § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A).  Where, as here, a claimant suffers

28  from both exertional and nonexertional limitations, the Grids do not mandate a

finding of disability based solely on the claimant's exertional limitations, and the claimant's non-exertional limitations are at a sufficient level of severity such that the Grids are inapplicable to the particular case, the Commissioner must consult a vocational expert.[2] Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007); see Lounsburry v. Barnhart, 468 F.3d 1111, 1116 (9th Cir.), as amended (2006); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record.  See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. §§ 404.1566(d)(1); 416.966(d)(1) (DOT is source of reliable job information).  The DOT is the presumptive authority on job classifications. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the

---

[2]The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

1  reasons therefor.  Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007)

2  (citing Social Security Ruling 00-4p).[3]  In order for an ALJ to accept vocational

3  expert testimony that contradicts the DOT, the record must contain "persuasive

4  evidence to support the deviation."  Pinto v. Massanari, 249 F.3d 840, 846 (9th

5  Cir. 2001) (quoting Johnson, 60 F.3d at 1435).  Evidence sufficient to permit such

6  a deviation may be either specific findings of fact regarding the claimant's residual

7  functionality, or inferences drawn from the context of the expert's testimony.

8  Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended

9  (1997) (citations omitted).

10      **B.    Analysis**

11      A job's level of simplicity is addressed by its General Educational

12  Development ("GED") reasoning rating.  Carney v. Astrue, 2010 WL 5060488, at

13  *4 (C.D. Cal. Dec. 6, 2010) (citing Meissl v. Barnhart, 403 F. Supp. 2d 981, 983

14  (C.D. Cal. 2005)).  DOT job descriptions include a GED definition component

15  "which embraces those aspects of education (formal and informal) which are

16  required of the worker for satisfactory job performance."  Grigsby v. Astrue, 2010

17  WL 309013, *2 (C.D. Cal. Jan. 22, 2010) (internal quotation marks omitted).  The

18  GED component is comprised of discrete scales, including a scale for "Reasoning

19  Development."  Id.  The GED reasoning development scale ranges from Level 1

20  (low) to Level 6 (high).  Id.  Levels 1 and 2 are defined as follows:

21      Level 1      Apply commonsense understanding to carry out simple one-or

22                     two-step instructions.  Deal with standardized situations with

23                     occasional or no variables in or from these situations

24                     encountered on the job.

25

26      [3]Social Security rulings are binding on the Administration.  See Terry, 903 F.2d at 1275.
27  Such rulings reflect the official interpretation of the Social Security Administration and are
    entitled to some deference as long as they are consistent with the Social Security Act and
28  regulations.  Massachi, 486 F.3d at 1152 n.6.

Level 2    Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

Id. (citing DOT, Appendix C).

Here, the ALJ erred at step five because she found plaintiff not disabled based on testimony from the vocational expert which, without explanation, deviated from the DOT.

First, the vocational expert's testimony was inconsistent the DOT. In her hypothetical question to the vocational expert, the ALJ included a limitation to occupations involving only "simple one-to-two-step job instructions." (AR 57, 61, 66-67). The vocational expert testified that, in spite of such limitations, plaintiff (or a hypothetical person with plaintiff's characteristics) could perform the occupations of photocopy machine worker, lunch room counter attendant, and greeter – each of which, according to the DOT, require a reasoning development level of 2. (AR 57, 61, 66-67); DOT §§ 207.685-014 ("Photocopying-Machine Operator"), 311.477-014 ("Counter Attendant, Lunchroom or Coffee Shop"), 222.687-010 ("Checker I" a/k/a "greeter"). An individual who is limited to "one-to-two-step job instructions," however, would be precluded from such jobs. Level 2 reasoning jobs involve "detailed but uninvolved written or oral instructions," which by definition is more complex than Level 1 reasoning jobs which are limited to "simple one-or two-step instructions." Grigsby, 2010 WL 309013 at *2 ("The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning.").

Second, since the vocational expert essentially denied that there was any conflict between the DOT and his testimony regarding the requirements of any of the three representative jobs (AR 66-69), neither the vocational expert nor the ALJ provided any persuasive explanation for the deviation. For example, when the

8

1   ALJ asked whether the job of photocopy machine worker "would [] fall within the
2   range of the one-to-two-step instructions" the vocational expert responded simply
3   "[a]s per the DOT." (AR 67).  Similarly, when plaintiff's attorney asked "you're
4   saying the lunchroom counter attendant never has any tasks exceeding one to two
5   steps[]," the vocational expert responded "[a]ccording to the DOT, SVP: 2,
6   unskilled."[4]  (AR 67).  Even when the attorney pressed further, the vocational
7   expert declined to change his opinion.[5]  With respect to the representative job of
8   "greeter," plaintiff's attorney likewise asked whether the requirements of that
9   position would "[ever] exceed[] one to two step tasks," and the vocational expert
10  responded "[n]ot as per the DOT." (AR 69).  When asked whether, based on his
11  experience, the vocational expert would "differ from the DOT [or] agree with it"
12  regarding such requirement, the vocational expert responded only "[i]t's a
13  relatively simple position." (AR 69).  Accordingly, the vocational expert's
14  testimony, which the ALJ adopted, could not serve as substantial evidence
15  supporting the ALJ's determination at step five that plaintiff could perform the
16  occupations of photocopy machine worker, lunch room counter attendant, and
17  greeter.  Pinto, 249 F.3d at 846.

18  _____

19      [4]To the extent the vocational expert suggested that the position of lunch room counter
20  attendant was consistent with plaintiff's limitation to one-to-two-step instructions because the
    position had a specific vocational preparation ("SVP") level of two (AR 67), the vocational
21  expert did not provide a persuasive explanation for his deviation from the DOT.  As noted above,
22  a job's level of simplicity is more properly addressed by its GED reasoning development rating,
    not, as the vocational expert suggests, by its SVP level.  See Meissl, 403 F. Supp. 2d at 983
23  ("SVP ratings speak to the issue of the level of vocational preparation necessary to perform the
24  job, not directly to the issue of a job's simplicity. . . .") (citation and quotation marks omitted).

25      [5]Specifically, plaintiff's attorney asked "[b]ased on your experience, if there's a problem
    with the food or with something that's being done, I mean what would that person do?  Wouldn't
26  that exceed one-to-two-step tasks if they [sic] have to solve a problem or return an order or do
27  something like that?" (AR 67-68).  The vocational expert responded "[w]ell, a counter attendant
    is not a restaurant owner or an assistant manager.  You know, basically just serving the food."
28  (AR 68).

1    Finally, the Court cannot find such error harmless as defendant points to no

2  other persuasive evidence in the record which could support the ALJ's

3  determination at step five that plaintiff was not disabled.  See, e.g., id. at 846-47

4  (remand warranted where ALJ found claimant not disabled at step four based

5  "largely" on vocational expert's testimony that conflicted with DOT, neither ALJ

6  nor vocational expert addressed the deviation, and ALJ otherwise "made very few

7  findings"); cf. Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ

8  erred in finding that claimant could return to past relevant work based on

9  vocational expert's testimony that deviated from DOT because ALJ "did not

10  identify what aspect of the [vocational expert's] experience warranted deviation

11  from the DOT, and did not point to any evidence in the record other than the

12  [vocational expert's] sparse testimony" to support the deviation, but error was

13  harmless in light of ALJ's alternative finding at step five, which was supported by

14  substantial evidence, that claimant could still perform other work in the national

15  and local economies that existed in significant numbers).

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.   CONCLUSION[6]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[7]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  January 25, 2013

_____
/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

_____

[6]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.  On remand, however, the ALJ may wish to consider any evidence plaintiff may submit regarding the availability in the national and regional economy of any representative jobs identified by the ALJ at step five, and may wish to determine whether the ALJ properly evaluated the subjective symptom testimony plaintiff gave during the administrative hearing.

[7]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).